1:05-CV-503-MHT-VPM

September 27, 2006

RECEIVED
2006 SEP 27 P 1:58
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Office of the Clerk
United States District Court
P.O. Box 711
Montgomery, Alabama 36101-0711

Case Name: Camacho v Pemco World Air Services, Inc.
Case Number: 1:05-CV-503-MHT-VPM

Subject: Objection to Recommendation of the Magistrate Judge

Gentlemen/Madam:

The Plaintiff respectfully object to the Magistrate Judge's recommendation on granting Defendant's Motion of Summary Judgement for it was flawed. To wit:

a) My back never healed, I have two broken bones and a fracture on my back;
b) The physical exam conducted was just for drug screening and no other;
c) Plaintiff was never placed on medical leave except for the two weeks from Nov 3, 2004 to November 17, 2004 as instructed by Mr. Batchev;
d) Original work status report states "limit exposure to fiberglass" as oppose to Defendant's claim;

1-2 q/10

Case No.: 1:05-CV-503-MHT-VPM

e) Defendant claimed receiving an amended work status report on Nov. 19 as opposed to Nov 18, 2004;

f) Defendant claimed Plaintiff failed to go to the medical appointment when in fact Plaintiff cancelled said appointment and was able to convey said cancellation to Miss Kristy, an answering service contracted by the hospital at 2:26 AM on Nov. 23, 2004 with strict instruction to relay the message to the office of Dr. Ruddock;

g) Defendant ~~Plaintiff~~ instructed Plaintiff to return to work after being wrongfully terminated on Nov. 18, 2004 but Defendant did not ask if Plaintiff wants to go back to work for Defendant. Plaintiff definitely does not want to go back to work for the Defendant because Plaintiff does not want to be subjected to discrimination, harassment, humiliation, stress, unsafe working environment, fear of retaliation, etc.; therefore Plaintiff is not subject to the CBA Co. Rule 10;

h) Plaintiff was in process of complaining on Nov. 18, 2004 about the discrimination/harassment, etc. but Mr. Bottcher ignored it, stepped out of his office (for he knew I was in process of complaining and that Miss Jerri Faulk and Mr. Bottcher were representative w/ regard to this matter) and was humiliated, pushed out (verbally in

Case No.: 1:05-CV-503-MHT-VPM

h) in a loud voice). Mr. Battcher said "even if we talked about it the whole day, nothing going to change/happen." I was also seeking the help of Mr. Sonny Gossett when I met him in the hanger to get Plaintiff's tool box, to file a claim on Plaintiff's behalf against the Defendant;

i) The State of Alabama's Dept of Industrial Relation denied Plaintiff's claim of unemployment because of what Mr. Battcher have said to that office. I was given an appeal (telephone) but was not able to, so that I will be able to express Plaintiff's side that Plaintiff was wrongfully terminated;

j) that Defendant never offer Plaintiff specialized care and Plaintiff never refuse it should there was any, etc.

In view of the Honorable Magistrate's judge recommendation, the Plaintiff has these to say:

a) with regards to Page 9, I was treated differently compared to group of co-employees in the crew who were "buddies" of Mr. Cooper and Mr. Music. They do take their sweet time, talking, joking, laughing while Plaintiff is hard at work. You'll hear their boisterous laughs. Plaintiff was discharged because Plaintiff sustained injury at work. Defendant will not experience undue hardship in it's operation of Defendant's business.

P.4 of 10

Case No.: 1:05-cv-503-MHT-VPM

a) Plaintiff was denied reasonable accomodation with extra protection to the physical and mental impairment brought about by this event. The injury caused a retaliatory measure by the Defendant in lieu of the Oct. 29, 2004 incident which became evident on Nov. 3 that led to the Nov. 18 termination. The injury that the Plaintiff have sustained since early employment have subjected the Plaintiff to sleepless nights which causes unsafe conditions that leads to poor judgement in the execution of task assigned. Deprived rest triggered the Plaintiff to commit mistake, memory loss, awareness.

b) On Page 11, Plaintiff did not stop working because Plaintiff needed to provide for the family inspite of Plaintiff's condition. Plaintiff is a hardworking, conscientious, with work ethics etc. but was ready to quit at anytime since Plaintiff had two emergency situations because working for the Defendant was hostile, intolerable, discriminatory, harassful, humiliating, etc. Plaintiff was trying to be more tolerable and ignoring what was happening because it will jeopardize the Plaintiff's ability to earn a living for the family. As a Filipino, the Plaintiff just kept silent and does not file complains because it will cause problems or trouble to Plaintiff employment.

P-5 of 10

Case No.: 1:05-CV-503-MHT-VPM

6) On page 12, Plaintiff did not decline to follow Dr. Jewell's instruction, which to date Plaintiff have been applying the medication prescribed, masking tape pulling, cold showers, etc. The Plaintiff informed Dr. Jewell that the prescribed medication was not applied for the duration of that two weeks being away from the work site. This the Plaintiff did to determine for sure that the fiberglass was the culprit of all these trouble about the injury. After the two weeks have past, Plaintiff started applying the prescribed medication given by Dr. Jewell and Dr. Pinkerton. Plaintiff did not go back to Defendant to work because Plaintiff was already terminated, that Plaintiff does not want to experience and subjection to the discrimination, harassment, hostile environment, humiliation, injury that Plaintiff and his family have suffered. The skin condition of the Plaintiff have not completely resolved. Plaintiff did not enjoy the benefit of health insurance in as much as the Plaintiff needed it since being terminated at Pemco. Nobody have informed the Plaintiff that he is still covered under the Health Insurance Program. Defendant already disenrolled me as of December 31, 2004. Defendant sent in the COBRA paperwork which I can afford to pay. As far as Plaintiff understand, Plaintiff is not under the Defendant insurance benefit program. Plaintiff was not able to apply medication for at least three months prior (way pass my employment with Pemco) to my deposition because Plaintiff

Case No.:= 1:05-CV-503-MHT-VPM

c) ran out of medication. If Plaintiff could have known that Plaintiff can still use the health benefit, Plaintiff could have use/seen the doctor and ask for more medication. And to ask that question to date, is the Plaintiff still covered at the defendant's health insurance benefit program? Plaintiff don't know and wanted to know. Plaintiff have to go to the VA doctors and asked for medication concerning Plaintiff injuries.

d) on page 13, It definitely affected Plaintiff's major life activities such as driving, walking, seeing, hearing, speaking, learning, thinking, working, eating, watching TV, watching movies, reading, cooking Filipino food. Plaintiff have to frequently drink coffee to stay awake through out the day due to sleepless night caused by the injuries sustained at work. Plaintiff occassionally drink coffee but now or while employed with Pemco, Plaintiff have to depend on coffee to keep up with the day's activities. But even with the intake of coffee, Plaintiff has a hard time keeping up with the body requirement signal that it needed the rest it requires. Plaintiff could not because Plaintiff on the daily basis have to go through the agony sleepless nights, itchiness, irritation, rolling of masking tape to the body, face, etc., taking cold showers etc. Instead of watching TV or reading, cooking, nor eating, Plaintiff would rather prefer to take the much needed sleep. But no no matter how hard Plaintiff tried to sleep, Plaintiff couldn't. It does

Case No. = 1:05-cv-503-MHT-VPM

2) caused the Plaintiff's safety at risk and that of others. Plaintiff on several occasion found himself in near accident going to the ditches while commuting to and from home and work. Also commuting to and from Alabama and Jacksonville, Florida and back to Alabama, Plaintiff on one early morning travel found himself stop in the middle of freeway

10- Plaintiff while driving end up sleeping while driving. Luckily, there were no vehicular traffic that save Plaintiff's life. Thereafter, Plaintiff have to seek the closest rest stop to sleep. It's been a pitiful for the plaintiff to be sleeping at rest stops or gas station just to be able to be with Plaintiff's family even for a short time. Plaintiff commute to and from Alabama, Florida, Alabama after the work ends for the week. Sometimes if rest stops is still far, Plaintiff end up on the side of the freeway taking short naps to make it safely to the rest stops. Unsafe conditions have been going on - whether at work, home, or on the road due to deprive sleeping - judgement are restricted and impaired, and mistakes are not far to occur. Plaintiff's life changed because of the injuries sustained at work made a chain reaction effect to Plaintiff's life activities, which the Plaintiff's wife and kids suffers the consequences and ripple effect of the injury sustained at work. Even the Plaintiff's intimate relationship with Plaintiff's wife were affected.

Case No. = 1:05-CV-503-MHT-VPM

e) On page 18, the error from which the Plaintiff was one of the effect of the deprived sleepless nights the Plaintiff was enduring throughout Plaintiff's employment with the Defendant. The Plaintiff disagree with the Honorable Court's statement labeling the Plaintiff to opportunistically complaining to detract attention from the error for which the Plaintiff was being reprimanded. The Plaintiff was the only one terminated but Mr. Riddle, a white man, was not terminated. Because of this incident, Defendant already was decided to terminate Plaintiff's employment that is why on Nov. 3, 2004 when Plaintiff went to see Mr. Battcher after Plaintiff's doctors appointment, responses were negative and that the essence of termination is in the air. This was the reason why the Plaintiff sought legal assistance from the Law Offices of Meredith, Mitchell, & Gabrielson, PC of Dothan, Alabama. Atty. Mitchell told me not to anticipate and to come back to his office when I can present a "smoking gun." The knowledge of being terminated was already evident when on Oct 29, 2004, Mr. Music was filling up the supervisor's incident (injury) report. I saw what he have written on it and on the "recommendation line" he wrote "termination" as his recommendation. I was not able to get a copy of what he filled out. This is the reason why I already have the knowledge that I will be terminated from my employment.

P. 9 of 10

Case No.: 1:05-cv-503-MHT-VPM

f) On pg 19, after being retaliatorily and wrongfully terminated last Nov. 18, 2004, it took several months of recuperating from the injury. I started working for Aotech/Northwest Airlines with minimal if non exposure to fiberglass. The itchiness and irritability was still there but not like when I was with Pemco. Wounds/ pores were still flaring up. The medication was helping me a lot.

g) On pg 81-83, Mr. Cooper reprimanded the plaintiff for being slow, and assigning the plaintiff to places in the aircraft where most of the crew doesn't want to be in. The same thing with Mr. Music. Both of them have been assigning the plaintiff on tight, dirty spaces of the aircraft on top of the intimidation, hostile environment, discrimination and injuries suffered while employed with Pemco.

h) On page 84, Pemco discriminated and harrassed, humiliated, belittled, targeted the plaintiff. Because I am a foreign born, with color, with accent, short, easily push away, don't complain, don't answer back, low profile, friendly, hardworker, sensitive, patience, respectful, obedient, hospitable, quiet, humble, steep out of trouble, go out of one's way to please people, etc. The plaintiff was taken advantage of. They/Pemco saw those qualities to discriminate, harrass, intimidate, talked about, laugh at, humiliate, belittle, pushed.

In conclusion, the plaintiff respectfully object to the Honorable magistrate judge's recommendation on ~~defendant's~~ the granting

Case No.: 1:05-cv-503-MHT-VPM

of Defendant's motion for summary judgment. A lot of the things that Defendant have done to the Plaintiff was recorded on the deposition last May 19, 2006 but not discuss here on any objections. I firmly believed that should a trial will proceed, the jury will be able to come to a favorable verdict in favor of the Plaintiff.

Sincerely,

*[signature]*

WILFREDO CAMACHO
1608 Paddlebrook Lane
Jacksonville, Florida 32221
Tel. (904) 781-1224

Certificate of Service

I certify that a true and correct copy of the foregoing was served upon all counsel of record by deposit thereof in the United States mail, postage prepaid and properly address as follows:

Maynard, Cooper, & Gale PC
Attorney AT Law
1901 Sixth Avenue North
2400 Am South/Harbert Plaza
Birmingham, Alabama 35203-2618

Dated this 27 day of September, 2006

*[signature]*

WILFREDO CAMACHO
Plaintiff